**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**ANISSA HUTTON,**

        **Plaintiff,**

    v.                          **Civil Action 2:20-cv-339
Judge Sarah D. Morrison
Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

## **REPORT AND RECOMMENDATION**

Plaintiff, Anissa Hutton ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period disability, disability insurance benefits, and supplemental security income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 9), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 402(g) for further consideration consistent with this Report and Recommendation.

### I.    PROCEDURAL HISTORY

Plaintiff protectively filed her application under Title II of the Social Security Act for a period of disability, disability insurance benefits, and supplemental security income benefits on February 9, 2017, alleging a disability onset of February 15, 2016. Plaintiff's applications were

denied initially and upon reconsideration. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Timothy Keller (the "ALJ") held a hearing on January 24, 2019, at which Plaintiff, represented by counsel, appeared and testified. (*Id*. at 18.) On April 1, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action. (ECF No. 1.)

In her Statement of Errors (ECF No. 11), Plaintiff asserts that reversal is warranted because in determining her mental residual functional capacity ("RFC"),[1] the ALJ failed to properly consider the opinions provided by the state-agency psychologists. More specifically, Plaintiff asserts that the ALJ erred in declaring that certain limitations, such as a limitation to only superficial contact, lacks vocational relevance.

## II. THE ADMINISTRATIVE DECISION

On April 1, 2019, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 281-292.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2020. (*Id*. at 21.) At step one of the

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite her limitations." 20 C.F.R. § 4040.1545(a)(1).

2

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since February 15, 2016, the alleged onset date of Plaintiff's disability. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: status post cervical spine fusion, post-traumatic stress disorder, anxiety abuse disorder, depressive disorder, cocaine use disorder, and attention deficit hyperactivity disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 21–22.)

At step four, the ALJ set forth Plaintiff's mental[3] RFC as follows:

> She retains the ability to understand, remember, and carry out simple, repetitive tasks and is able to respond appropriately to supervisors and coworkers in a task oriented setting with no public contact and occasional interaction with coworkers; and is able to adapt to simple changes and avoid hazards in a setting without strict production quotas.

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] Plaintiff's sole contention of error pertains only to her mental health impairments and restrictions. Accordingly, the undersigned's discussion is limited to those issues.

(R at 285.)

In assessing Plaintiff's mental RFC, the ALJ discussed Plaintiff's mental health treatment history, including Plaintiff's self reports of "temper and irritability." (R. at 287; *see also* R. at 288 (noting that Plaintiff continued to report being irritable and that "she was started with anger management treatment").) The ALJ also accorded "some weight" to the state agency psychological consultants, reasoning as follows:

> Their opinions, overall are generally well supported by the claimant's mental health records. However, the undersigned notes the opinions contain terms not well defined and vocationally [relevant]. For instance, the limitations to "superficial" interaction. The undersigned accommodated the claimant's limitations in interacting with others limiting her to no public contact and occasional interaction with co-workers. This is consistent with her conservative treatment, and presentation at mental health visits, as discussed above. Similarly, the undersigned finds that the claimant can understand remember and carry out simple repetitive tasks, rather than 1-3 step tasks.

(R. at 289-90.)

At step five of the sequential process, relying on the VE's testimony, the ALJ found that Plaintiff is not capable of performing past relevant work. (R. at 290.) The ALJ further found that jobs exist in significant numbers in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (R. at 291.) Examples include cashier, mail clerk, and packer. (R. at 262.) The ALJ further found that Plaintiff is capable of making a successful adjustment to such employment. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (*Id.*)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.  ANALYSIS

The undersigned finds that remand is required because the ALJ erred in his consideration of the opinions of the state-agency psychologists in connection with his assessment of Plaintiff's mental RFC.

5

The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e).  Nevertheless, substantial evidence must support the Commissioner's RFC finding.  *Berry v. Astrue*, No. 1:08-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).  An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

S.S.R. 96-8p, 1996 WL 374184, at *7 (internal footnote omitted).

In addition, the ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").  The applicable regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1); *see also* SSR 96–8p, 1996 WL 374184, *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions.").  Like other medical source opinions, the ALJ must consider state agency medical opinions.  *See* 20 C.F.R. § 416.913a(b)(1) ("Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 416.920b, 416.920c, and 416.927, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts

6

in Social Security disability evaluation."); SSR 96-6p, 1996 WL 374180, *2 (July 2, 1996) (administrative law judges are required to consider state agency medical "findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and Appeals Council are not bound by findings made by State agency . . . but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.").

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. "In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, *3; *see also Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (state-agency medical consultants are "highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act;" thus, in some cases, "an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating . . . source." (first alteration in original) (internal quotation marks omitted)); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 415 (6th Cir. 2004) ("State agency medical consultants are considered experts and their opinions may be entitled to greater weight if their opinions are supported by the evidence.").

Here, state agency psychologists Juliette Savitscus, Ph.D. and Courtney Zeune, Psy.D. reviewed the record and offered their opinions regarding Plaintiff's mental RFC. As relevant here, Drs. Savitscus and Zeune opined that with respect to Plaintiff's social interaction capacity

7

and/or limitations, Plaintiff could "interact briefly and occasionally in situations that do not require more than superficial contact with coworkers and supervisors. No contact with the public. No resolving conflicts or persuading others to follow demands." (R. at 528, 542, 558, 572.) With respect to Plaintiff's adaptive limitations, Drs. Savitscus's and Zeune opined that Plaintiff required "an environment that has infrequent changes that can be easily explained." (*Id*.) As set forth above, the ALJ accorded these opinions "some weight," describing the opinions as "generally well supported," but apparently discounting the opinions to some degree because they "contain[ed] terms not well defined and vocationally [relevant]." (R. at 290.) The ALJ noted, by way of example, Drs. Savitscus's and Zeune's opinion that Plaintiff's interactions must be "superficial," which the ALJ appears to maintain he accommodated by limiting Plaintiff's interactions to occasional. (*See* R. at 289-90.) The ALJ also did not incorporate the opinions of Drs. Savitscus and Zeune that Plaintiff required "an environment that has infrequent changes that can be easily explained," but it is unclear whether he rejected such a limitation as unnecessary, rejected it as not well defined and lacking vocational relevance, or whether he believed limiting Plaintiff to an environment with "simple changes" accommodated their opinion.

The problem with the ALJ's consideration of Drs. Savitscus's and Zeune's opinions regarding Plaintiff's social interaction limitations is that the terms "occasional" and "superficial" are not interchangeable. *See Hurley v. Berryhill*, No. 1:17-CV-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018) ("'Occasional contact' goes to the quantity of time spent with [ ] individuals, whereas 'superficial contact' goes to the quality of the interactions.") (citations omitted). Thus, courts routinely recognize that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—

including a limitation to "superficial" interaction.  *See*, *e.g., Corey v. Comm'r Soc. Sec.*, No. 2:18-cv-1219, 2019 WL 3226945, at *4 (S.D. Ohio July 17, 2019) ("[R]eversal is warranted because the ALJ assigned significant weight to Dr. Marlow's opinions, but failed to include limitations for 'superficial' interactions."); *Lindsey v. Comm'r Soc. Sec.*, No. 2:18-CV-18, 2018 WL 6257432, at *4 (S.D. Ohio Nov. 30, 2018) ("'Occasional contact' goes to the *quantity* of time spent with [ ] individuals, whereas 'superficial contact' goes to the *quality* of the interactions." (emphasis added)) (quoting *Hurley v. Berryhill*, No. 1:17-cv-421-TLS, 2018 WL 4214523, at *4 (N.D. Ind. Sept. 5, 2018)); *Barker v. Astrue*, No. 5:09-cv-1171, 2010 WL 2710520, at *5–6 (N.D. Ohio July 7, 2010) (finding that the ALJ erred in failing to include in plaintiff's "RFC the prior ALJ's findings, as adopted by the state agency physicians, that [p]laintiff have no interaction with the public and only superficial interaction with co-workers and supervisors" where the ALJ only "limited [p]laintiff to no more than *occasional* interaction with the public (as opposed to no interaction with the public, as in ALJ Hafer's assessment), and he made no mention of whether and to what extent [p]laintiff can interact with co-workers and supervisors (whereas ALJ Hafer found that [p]laintiff was limited to superficial contact with such individuals).").

Put simply, in contrast to the ALJ's rejection of Drs. Savitscus's and Zeune's opinion that Plaintiff was limited to only superficial interactions as "not well defined and vocationally [relevant]," "superficial interaction" is a well-recognized, work-related limitation.  The undersigned therefore finds the ALJ's explanation lacking, which necessitates remand.  *See Hurley*, 2018 WL 4214523, at *4 (explaining that "occasional" and "superficial" are not interchangeable terms and finding that the ALJ erred in making no attempt to explain the basis of his decision to limit plaintiff to occasional rather than superficial interactions) (citing *Gidley v.*

9

*Colvin*, No. 2:12-cv-374, 2013 WL 6909170, at *12 (N.D. Ind. Dec. 30, 2013)); *Cote v. Colvin*, No. 16-cv-57-SLC, 2017 WL 448617, at *7 (W.D. Wis. Feb. 2, 2017) (reversing and remanding where "[t]he ALJ did not explain his reasons for only limiting the quantity and not the quality or duration of plaintiff's social interaction, even though several of the physicians whom he credited made clear that plaintiff's difficulties related to the quality of the interaction").

To be clear, an ALJ is not required to mirror or parrot medical opinions verbatim. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). And certainly, where, as here, an ALJ has accorded an opinion only "some weight," the ALJ need not include all of the limitations in the RFC or even discuss why certain limitations have been omitted. Rather, the problem here is that the ALJ's discussion reveals that he failed to even consider whether Plaintiff did, in fact, require a limitation to only superficial interaction because he incorrectly concluded that such a limitation is either vague or was otherwise accommodated by limiting Plaintiff to only occasional interaction.

Further, as discussed above, it is unclear whether the ALJ the rejected as unnecessary the opinions of Drs. Savitscus and Zeune relating to Plaintiff's adaptive limitations or whether he rejected the opinions as not well defined or whether, in his view, his RFC accommodated their opinions. Remand is therefore required so that the ALJ may properly consider the opinions of Drs. Savitscus and Zeune and provide an explanation that allows this Court to conduct meaningful review. *See, e.g.*, *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (An ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'") (quoting 5 U.S.C. § 557(c)(3)(A)); *Commodore v. Astrue*, No. 10-295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) ("The ALJ must articulate the reasons for his

findings, particularly when they deviate from the sources he purports to rely on.  In the context of purely conclusory statements, this Court cannot conduct a meaningful review of whether substantial evidence supports the ALJ's decision."); *Cote v. Colvin*, No. 16-cv-57, 2017 WL 448617, at *7 (W.D. Wisc. Feb. 2, 2017) ("On remand, the ALJ must build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment.").

The Commissioner's reliance upon the descriptions set forth in the DOT to conclude that any error is harmless is unavailing.  "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments."  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).  As set forth above, remand is required so that the ALJ may properly consider and discuss the opinions of Drs. Savitscus and Zeune and determine what, if any, alterations may need to be made in the RFC, which, in turn, could alter the testimony the VE offered and upon which the ALJ relied to conclude that Plaintiff was not disabled.

## V. DISPOSITION

Due to the errors outlined above, Plaintiff is entitled to an order remanding this case to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g). Accordingly, the undersigned **RECOMMENDS** that the Court **REVERSE** the Commissioner of Social Security's non-disability finding and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this Report and Recommendation.

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*  
CHELSEY M. VASCURA  
UNITED STATES MAGISTRATE JUDGE